UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| MICHELS PIPELINE, INC., | Case No. 21-CV-1648 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, AFL-CIO AND ITS AFFILIATED ENTITIES INCLUDING LOCAL 798; DISTRIBUTION CONTRACTORS ASSOCIATION; PIPE LINE CONTRACTORS ASSOCIATION, | |
| Defendants. | |

---

Noah G. Lipschulz, Jonathan O. Levine, Michael S. Yellin, LITTLER MENDELSON P.C., for plaintiff.

Keith R. Bolek, Ellen O. Boardman, O'DONOGHUE & O'DONOGHUE LLP; Brendan D. Cummins, CUMMINS & CUMMINS, LLP, for defendant United Assocation of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry of the United States and Canada.

Louis L. Robein, Jr., ROBEIN, URANN, SPENCER, PICARD & CANGEMI APLC; Brendan D. Cummins, CUMMINS & CUMMINS, LLP, for defendant Local 798.

Thomas R. Revnew, Martin D. Kappenman, PETERS, REVNEW, KAPPENMAN & ANDERSON, P.A., for defendant Distribution Contractors Association.

Brian W. Easley, Courtney L. Burks, Emily M. Peterson, Kristin M. Simonet, JONES DAY, for defendant Pipe Line Contractors Association.

Plaintiff Michels Pipeline, Inc. ("Michels") is a contractor in the natural-gas pipeline industry. Michels is a member of two trade associations: defendant Distribution Contractors Association ("DCA") and defendant Pipe Line Contractors Association ("PLCA"). Both of these trade associations have negotiated collective bargaining agreements ("CBAs") with defendant United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("the Union"). Michels is a signatory to both CBAs, which the Court will refer to as the "Distribution agreement" and the "Mainline agreement."

Michels recently contracted with Xcel Energy Inc. ("Xcel") to provide services in connection with two projects. Michels contends that Union members' work on those projects is governed by the Distribution agreement; the Union contends that the work is governed by the Mainline agreement. Both sides filed grievances (Michels under the Distribution agreement and the Union under the Mainline agreement), and the grievances are heading toward two separate arbitration proceedings.

Michels filed this action as well as a motion for a temporary restraining order and preliminary injunction, seeking to enjoin both arbitrations pending a court determination as to which of the two agreements applies to the Xcel projects.[1] For the reasons that follow, Michels' motion is denied.

---

[1] Although named as a defendant, DCA filed a brief joining Michels' motion.

## I.  NORRIS-LAGUARDIA ACT

The Union argues that, under the Norris–LaGuardia Act ("NLA"), 29 U.S.C.

§§ 101–115, the Court lacks jurisdiction to issue the requested injunction.  The Court

agrees.

"The Norris–LaGuardia Act generally prohibits federal courts from issuing

injunctive relief in labor disputes."  *Loc. Union No. 884, United Rubber, Cork, Linoleum, &*

*Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1351 (8th Cir. 1995).

Section 1 of the NLA provides as follows:

> No court of the United States . . . shall have jurisdiction to
> issue any restraining order or temporary or permanent
> injunction in a case involving or growing out of a labor
> dispute, except in a strict conformity with the provisions of
> this chapter; nor shall any such restraining order or
> temporary or permanent injunction be issued contrary to the
> public policy declared in this chapter.

29 U.S.C. § 101.

The first question, then, is whether this case "involv[es]" or "grow[s] out of" a

"labor dispute."  The NLA defines "labor dispute" broadly to include

> any controversy concerning terms or conditions of
> employment, or concerning the association or representation
> of persons in negotiating, fixing, maintaining, changing, or
> seeking to arrange terms or conditions of employment,
> regardless of whether or not the disputants stand in the
> proximate relation of employer and employee.

*Id.* § 113(c).

The underlying dispute between the parties here is clearly a "controversy concerning terms or conditions of employment"; the parties are disputing whether the terms and conditions of certain CBAs apply to work that the Union's members are performing on the Xcel projects. And as multiple federal appellate courts have recognized, an arbitration of a labor dispute "involv[es]" and "grow[s] out of" that labor dispute.[2]

If that were not enough, the NLA further states that

> [a] case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees[.]

---

[2]*See Triangle Constr. & Maint. Corp. v. Our Virgin Islands Lab. Union*, 425 F.3d 938, 945–46, 952–53 (11th Cir. 2005) (NLA deprived court of jurisdiction to enjoin labor arbitration); *AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 759–63 (7th Cir. 2003) (same); *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 11–15 (1st Cir. 1994) (same); *Lukens Steel Co. v. United Steelworkers*, 989 F.2d 668, 676–79 (3d Cir. 1993) (same); *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1342–43, 1350 (9th Cir. 1990) (same); *In re Dist. No. 1–Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n*, 723 F.2d 70, 74 n.2, 79 (D.C. Cir. 1983) (same); *Jou-Jou Designs, Inc. v. Int'l Ladies Garment Workers Union*, 643 F.2d 905, 911 (2d Cir. 1981) (same).

*Id.* § 113(a).  This case "involves persons who are engaged in the same industry, trade, craft, or occupation" and is "between one or more employers or associations of employers and one or more employees or associations of employees" as well as "between one or more employers or associations of employers and one or more employers or associations of employers."  As a result, this case "shall be held to involve or grow out of a labor dispute." *Id.*

Michels points to § 4 of the NLA, which specifies certain activities that courts may not enjoin.  *See id* § 104.  Because "arbitration" is not on the list, Michels argues, the NLA is inapplicable.  This argument misconstrues the interplay between § 1 and § 4 of the NLA.  Section 1 is not a blanket prohibition on injunctions in cases that involve or grow out of labor disputes; instead, in conjunction with other provisions of the NLA, it imposes certain substantive and procedural requirements that the parties and court must meet before an injunction may issue.  Section 4, by contrast, is a list of activities that a court may *never* enjoin.[3]  Obviously, § 4 does not delimit the scope of the NLA; if it did, then the provisions dictating when an injunction may issue would be meaningless.  *See Brady v. Nat'l Football League*, 644 F.3d 661, 681 (8th Cir. 2011) (first holding that § 4 did not apply to an injunction concerning the league's treatment of free

---

[3]The Supreme Court has created certain narrow exceptions to the absolute prohibition in § 4.  *See Boys Mkts., Inc. v. Retail Clerks Union, Loc. 770*, 398 U.S. 235, 253–54 (1970).

agents and prospective players, then analyzing whether that injunction had been issued "in strict conformity with § 7"); *Tejidos de Coamo, Inc.*, 22 F.3d at 11 n.5 ("section 4 prohibits any temporary restraining order or injunction against certain acts (*e.g.*, refusing to work) regardless of circumstances; and section 7 imposes severe conditions on the grant of injunctive relief where it is not barred outright by section 4"); *Camping Constr. Co.*, 915 F.2d at 1341 ("[S]ection 4 of the Act . . . sets forth a list of specific acts against which the federal courts may under no circumstances issue an injunction. . . . [S]ections 7 and 9 . . . impose a number of substantive and procedural conditions on the availability of injunctive relief in all other cases[.]"); *In re Marine Eng'rs' Beneficial Ass'n*, 723 F.2d at 79–80 ("Section 4 enumerates certain specific acts . . . that are not subject to restraining orders or injunctions.  It does not follow from this, however, that a district court has jurisdiction to issue a restraining order or injunction in any case 'involving or growing out of a labor dispute' whenever the act sought to be enjoined is not listed in § 4.").

Michels also argues that the Eighth Circuit has authorized employers to seek to enjoin labor arbitrations notwithstanding the NLA, citing *Local Union No. 36, Sheet Metal Workers' International Association v. Atlas Air Conditioning Co.*, 926 F.2d 770 (8th Cir. 1991).  As the Court discussed at oral argument, Michels reads far too much into this case, which was a lawsuit to enforce an arbitration award and had nothing to do with

the NLA.  In discussing the employer's failure to preserve its objection to the

arbitrator's jurisdiction, the Eighth Circuit noted (in dicta) a variety of ways that the

employer could have done so, including by seeking injunctive relief before arbitration

commenced.  *Id.* at 771–72.

There is nothing remarkable about this observation; as discussed above, the NLA

does not include arbitration in the list of activities that a court may never enjoin and it is

therefore theoretically possible that an employer could obtain such an injunction so

long as it meets the requirements of the NLA.  As *Atlas* does not even mention the NLA,

however, it cannot be read to hold that the NLA simply does not apply to requests to

enjoin an arbitration.  *See Camping Constr. Co.*, 915 F.2d at 1349–50 (rejecting an identical

argument).  In short, the NLA clearly applies to this case.

The next question, then, is whether Michels can show that it is entitled to an

injunction under the restrictive provisions of the NLA.  *See* 29 U.S.C. § 101 (stating that

no injunction may issue "except in a strict conformity with the provisions of this

chapter").  The answer is "no," as Michels falters on (among other things) the

requirement that it show "[t]hat unlawful acts have been threatened and will be

committed unless restrained or have been committed and will be continued unless

restrained."  *Id.* § 107(a).

Michels contends that the Union is in breach of contract and that this constitutes an "unlawful act."  Michels is wrong on both counts.  First, a mere breach of contract is not, by itself, an "unlawful act."  *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp.*, 230 F.3d 569, 582 (2d Cir. 2000) (noting that the Labor Management Relations Act "authorizes suits for breach of CBAs, and such a breach need not, and in most cases will not, entail any unlawful conduct" within the meaning of the NLA); *Pritchard Elec. Co. v. Int'l Bhd. of Elec. Workers*, 306 F. Supp. 2d 603, 612 (S.D. W. Va. 2004) ("To include a garden variety breach of contract into the NLA's 'unlawful acts' requirement would render the statutory requirements for an injunction superfluous.").

Second, Michels has not identified any breach of contract by the Union (or any other defendant).  Even if, as Michels (wrongly) contends, the parties' dispute is not arbitrable under the Mainline agreement, the Union's invocation of that agreement's grievance and arbitration procedures is not itself a breach of any contract.  Put another way, Michels does not point to any contractual provision in either the Distribution or Mainline agreements that defines a *request* to arbitrate a non-arbitrable grievance as a breach of contract.  In the absence of such language, a party does not breach a contract by asking that an arbitrator determine whether a dispute is arbitrable, even if the arbitrator's answer turns out to be "no."  Moreover, as discussed below, the Court

-8-

agrees with the Union that the parties' dispute *is* arbitrable under the Mainline

agreement.  Michels therefore cannot meet the NLA's requirements for obtaining an

injunction.

Finally, citing cases that have created certain extra-textual exceptions to the NLA,

Michels argues that the injunction it seeks is permissible because it is intended to

facilitate arbitration.  *See Boys Mkts.*, 398 U.S. at 252–54 (notwithstanding § 4's

prohibition on enjoining strikes, courts may enjoin them where the union is striking

over an arbitrable grievance because otherwise employers would be reluctant to agree

to contractual arbitration provisions); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448,

457–59 (1957) (where the parties have agreed to arbitrate, courts may compel arbitration

notwithstanding the NLA).

These judicially recognized exceptions to the NLA are "narrow," however, and

are not an invitation to courts to ignore the NLA whenever it is possible to identify

some way in which an injunction might help to facilitate arbitration.  *Boys Mkts.*, 398

U.S. at 253; *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 409 (1976) ("aside from

the enforcement of the arbitration provisions of such contracts, within the limits

permitted by *Boys Markets*, the Court has never indicated that the courts may enjoin

actual or threatened contract violations despite the Norris–LaGuardia Act").  Moreover,

expanding *Boys Markets* to cover the circumstances of this case would be particularly

inapt, as it is difficult to imagine *enjoining* arbitration—and then deciding the dispute that would otherwise be arbitrated—would *facilitate* arbitration.  *See, e.g., AT&T Broadband, LLC,* 317 F.3d at 761 ("AT&T, which wants the court to issue an *anti-arbitration* injunction, is in no position to seek shelter from the *Boys Markets* principle or an extension of that approach.").

Michels contends that this case is distinguishable because Michels is not seeking to avoid arbitration altogether.  As a practical matter, however, that is indeed what Michels seeks.  Michels is asking the Court to stay all arbitration and to resolve the parties' dispute on the merits, which would leave little or nothing to arbitrate.  Setting that aside, Michels *is* seeking to altogether avoid an arbitration proceeding—the arbitration proceeding under the Mainline agreement.  In that regard, Michels is comparable to employers in cases in which courts have declined to enjoin arbitration, notwithstanding the protests of those employers that they could not be forced to arbitrate a non-arbitrable dispute.  As courts have noted, an employer in that position can still make its argument that the dispute is not arbitrable; the employer simply has to make the argument *after* the arbitration.  *See id.* at 762.  Fundamentally, Michels is not in the same position as the employer in *Boys Markets*; unlike the employer in *Boys Markets*, Michels is not being deprived of the benefit of its agreement to arbitrate the parties' dispute.

-10-

In sum, Michels cannot meet the requirements for an injunction under the NLA and has not shown that any of the judicially created exceptions to the NLA apply. The Court therefore lacks jurisdiction to issue the injunction that Michels seeks.

## II.  ARBITRABILITY

Even if the Court had jurisdiction to enjoin the arbitrations, it would decline to do so because Michels is not likely to prevail on the merits.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc) (in considering whether to grant a preliminary injunction, courts must consider, among other things, the movant's likelihood of success on the merits).

It is true, as Michels argues, that unless the CBA "clearly and unmistakably" provides otherwise, the threshold question of arbitrability must be determined by a court.  *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986).  As the Court discussed in detail at oral argument, however, the threshold question of arbitrability in this case is *not* which of the two CBAs governs Union members' work on the Xcel projects.  Rather, the threshold question is whether the parties' dispute about that issue is within the scope of the arbitration provision of the Mainline agreement.[4]  *Id.*

---

[4]As Michels has asked the Court to enjoin arbitration proceedings under both agreements, Michels' motion also presents the question whether the parties' dispute is within the scope of the arbitration provision in the Distribution agreement.  The parties agree, however, that the parties' dispute *is* arbitrable under the Distribution agreement.  (The Union argues that the dispute is arbitrable under *both* agreements, while Michels

(continued...)

-11-

(characterizing "the question of arbitrability" as the question "whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance"); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce").

Here, the parties dispute whether the Mainline agreement applies to Union members' work on the Xcel projects.  The Mainline agreement contains language defining the work that comes within that contract's scope.  *See* Hunsberger Decl. Ex. 3 at 1–2 [ECF No. 1-2 at 27–28].  The Mainline agreement also provides that issues of contract interpretation are arbitrable.  *See id.* at 28 [ECF No. 1-2 at 54] ("Questions regarding the interpretation of this Agreement are to be resolved by the Parties to this Agreement in accordance with" the arbitration provision).  Clearly, then, this dispute—a dispute over whether certain work is within the scope of the Mainline agreement—falls squarely within the Mainline agreement's arbitration provision.  The fact that an arbitrator may eventually determine that the Mainline agreement does not apply to the Xcel projects does not mean that that question is not *arbitrable* under the Mainline agreement.

---

[4](...continued)
argues that the dispute is arbitrable under *only* the Distribution Agreement.)  If Michels does not want to arbitrate under both agreements, it is, of course, free to withdraw its grievance under the Distribution Agreement.

Michels points to no contractual language that would exclude this dispute from the arbitration clause.  *Cf. AT&T Techs.*, 475 U.S. at 645 (noting contractual language potentially excluding the parties' dispute from the scope of the arbitration clause).  Nor is there any dispute that the Mainline agreement is fully in effect and that Michels is a signatory.  *Cf. Granite Rock*, 561 U.S. at 296–97 (like other contract-formation issues, dispute over date that CBA came into effect had to be resolved by court).  For these reasons, Michels is unlikely to succeed in showing that the dispute over whether the Mainline agreement applies to Union members' work on the Xcel projects is not arbitrable under the Mainline agreement.  Even if the Court had jurisdiction to grant the relief that Michels is seeking, therefore, it would deny Michels' motion.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's motion for a temporary restraining order and preliminary injunction [ECF No. 6] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 10, 2021                  s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge